# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LJUBICA JURCEVIC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 06 C 6816** |
| | ) | |
| **v.** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **MICHAEL ASTRUE,** | ) | |
| **Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are cross-motions for summary judgment in this Social Security case. For the following reasons, the decision of the Commissioner of Social Security ("Commissioner") is reversed in part and remanded for further proceedings.

## I. BACKGROUND FACTS

**A.     Procedural History**

Claimant Ljubica Jurcevic ("Claimant") filed an application for Disability Insurance Benefits ("DIB") on September 18, 2004, claiming onset of her disability on September 14, 2004. R.70. Claimant's application was denied initially and on reconsideration. *Id.* The Administrative Law Judge ("ALJ") assigned to the case, Paul R. Armstrong, held a hearing on Claimant's application on October 13, 2005, at which Claimant, Claimant's husband Peter Jurcevic, and Vocational Expert Pamela Tucker ("VE") testified. R. 271-309. Claimant was represented by counsel at the hearing. R. 273.

On November 15, 2005, the ALJ issued his decision, determining that Claimant was not disabled. R. 20-29. The Appeals Council denied Claimant's request for review on November 16, 2006, and refused to consider new evidence presented to it. R. 4-6.

Claimant now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Claimant's alleged impairments are: left and right shoulder impingement, hysterectomy, bladder hernia, arthritis of the hips, back pain, and swelling of the legs. R. 83, 282, 291, 292, 295, 304.

**B.     Hearing Testimony–October 13, 2005**

**1. Claimant's Testimony**

Prior to filing her disability claim, Claimant worked at FedEx as a delivery driver. R. 279. Claimant has an eighth grade education. She can read English, but has problems with writing and spelling. R. 287. Claimant stopped working at FedEx after she fell and injured her right hip and left shoulder during a delivery. R. 282.

Claimant described several medical problems. First, she testified about injuries to both of her shoulders and subsequent surgeries. The left shoulder surgery occurred more recently than the right. R. 280. Claimant is more comfortable keeping her left arm close to her body, and has trouble reaching her left arm above her head. R. 280-81. She does not feel that her left shoulder has healed as well as her right, despite her physical therapy exercises. R. 281-82. Following her left shoulder surgery, Claimant was not cleared by her doctor to return to repetitive overhead activities. R. 284. The surgeon also placed a fifteen-pound restriction on her lifting. *Id.* Claimant is right handed. R. 282.

Claimant testified that because of the problems with her left shoulder, she does not do any lifting, and when she goes shopping, she has people help carry things for her. R. 284, 291. She does not feel that she could lift twenty pounds. R. 286. Claimant's driving is also limited, as her left shoulder affects her steering. R. 284. She performs some household tasks such as cooking, dusting, and laundry, but she does not vacuum because of left shoulder pain. R. 290-91. Claimant ices her left shoulder two or three times each day for about twenty to thirty minutes at a time, in order to prevent swelling. R. 292. Claimant has some limitations raising her right hand overhead, and has a "clicking" in her right shoulder. R. 281.

Next, Claimant testified about problems with her right hip, which also resulted from her fall. R. 282. Claimant experiences pain in her hip when sitting for a fifteen to thirty minute period, and it takes her a while to stand and straighten. R. 282. Her doctor told her the pain was due to arthritis, but she attributes it to the fall. R. 282. Since the fall, she has had trouble walking more than short distances. R. 282. She is able to walk approximately one block before she must stop or slow down, and she rests for one or two minutes before continuing to walk. R. 288. As a result of her hip injury, Claimant does not feel that she could stand or walk for six hours of an eight hour work day. R. 294. A recent MRI of her right hip showed no arthritis and no break. R. 283.

Claimant also suffers from the lingering effects of a hysterectomy performed as a result of a prolapsed[1] bladder. R. 283. The surgeon told Claimant that "everything is fine." R. 283. Following the surgery, Claimant was given a pamphlet that instructed her not to lift more than a gallon of milk to prevent another prolapse of the bladder. R. 283, 288-89. Claimant understood the instruction to apply for the rest of her life. R. 283, 289. When she lifts or walks, she has the feeling of something pushing down in her stomach. R. 290, 294. Claimant feels that her bladder would prevent her from walking or standing six hours in an eight hour work day, and that she tires more easily. R. 295. Claimant was told that she needed to have some additional tissue removed. R. 293-94.

Claimant next described minor problems with her right hand. She hurt her right hand in November of 2003, and as a result it becomes inflamed, causing her to be "sloppy" with it. R. 291. She testified, however, that she is able to open and close her hand, as well as write with it and put on jewelry with bigger clips. R. 291-92. Her doctor said that her hand is fine. R. 291.

Claimant also testified briefly about several other problems. She experiences pain in her lower back connected to her hip when sitting "a little longer." R. 292, 295. Claimant saw a doctor in 2003 because she has trouble breathing, particularly when she walks. R. 302. The doctor advised her that losing weight may help alleviate the problem. R. 302-03. Finally, Claimant noted that her legs swell when she stands, and that her doctor again recommended

---

[1]"A sinking of an organ or other part, especially its appearance at a natural or artificial orifice." Stedman's Medical Dictionary 1436 (26th ed.).

losing weight to remedy the problem. R. 304-05. Claimant wears special stockings to alleviate the swelling in her legs. R. 305.

For her various impairments, Claimant takes ibuprofen as needed. R. 293. She has a prescription for a pain reliever, but does not take that medication every day. R. 293. The ibuprofen makes Claimant drowsy. R. 297.

### 2. Peter Jurcevic

Claimant's husband, Peter Jurcevic, testified that he performs a lot of jobs for Claimant around the house due to her various impairments. R. 290. Mr. Jurcevic added that Claimant walks slower as a result of her impairments, and that she can only walk a few blocks before getting tired. R. 285.

### 3. Pamela Tucker–Vocational Expert

Pamela Tucker, a VE, testified regarding Claimant's past relevant work, and existing jobs in the economy that may be suitable for Claimant. The VE classified Claimant's past relevant work as a delivery driver as medium in physical demand and semi-skilled in nature pursuant to the Dictionary of Occupational Titles, but noted that Claimant performed the work as a heavy demand position. R. 296.

The ALJ then posed a hypothetical to the VE regarding available jobs in the economy, giving the following limitations: light exertional duties; a fifteen-pound bilateral weight restriction and a ten pound weight restriction with the left arm for lifting, carrying, pushing, or pulling; no overhead work with the left arm; and no work at unprotected heights, around dangerous machinery, open flames, or bodies of water. R. 296-97. The VE testified that such

a person could not return to Claimant's past relevant work. R. 297. The VE identified other jobs, however, that such a person could perform in the regional and national economy. R. 297. Those jobs included about 1,600 order clerk positions, 660 checker positions, and 1,800 interviewer positions, all in the Chicago area and six surrounding counties. R. 296.

When the ALJ added to the hypothetical a restriction of limited English, the VE testified that at least most of the interviewing positions would then be eliminated, and that the order clerk and checker positions would be reduced but not eliminated. R. 298.

Upon questioning by Claimant's attorney, the VE clarified that the 1,600 order clerk positions and 660 checker positions were reduced from the total number to account for the fact that the hypothetical person could only perform a "limited range of light-duty work," and that while some positions in those categories are characterized as sedentary, the VE did not include those positions in the number she gave. R. 299-300, 303.

Claimant's attorney then altered the hypothetical person to one who could only lift eight pounds. R. 305. The VE testified that the number of available positions for such a person would be reduced from the previous numbers given, but that there would still be some positions available as an order clerk or checker, as many of those positions do not involve a great deal of lifting. R. 305-06.

## C. Medical Records

### 1. Excel Occupational Health Clinic

Claimant's records contain several visits to Excel Occupational Health Clinic, which treated FedEx employees for work-related injuries. In August and September, 2002, Claimant was treated for a lumbar back strain. R. 187-94. The injury resolved and Claimant was cleared to return to her regular work. R. 187-88. An MRI showed moderate degenerative changes to her spine with fairly well-preserved disc spaces. R. 193-94.

In November 2003, Claimant was treated for injuries sustained in a fall. R. 165-74. She was diagnosed with a left shoulder contusion and right hip contusion, both of which resolved, allowing Claimant to return to work. R. 169. Claimant was also treated for weakness and pain in her right hand, and was unable to return to work until she was cleared by her primary care physician. R. 165-67.

In June 2004, Claimant was treated for a left shoulder injury. R. 160-63. Claimant was initially cleared to return to work with a lifting and overhead work restriction. R. 161. The injury resolved within two weeks, and Claimant was cleared to return to work without restrictions. R. 160.

Finally, in August through October, 2004, Claimant was treated for another injury to her left shoulder. R. 154-58. Claimant was initially cleared to work with a lifting and overhead work restriction. R. 158. Claimant was later diagnosed with a left shoulder labral tear, and was cleared to return to "regular work without restriction as tolerated." R. 154.

### 2. Dr. E. Vukomanovic

In October 2003, Dr. E. Vukomanovic treated Claimant for complaints of pain in her hips and knees and swelling of her legs. R. 268. Much of the record from that date is illegible, but it appears that Claimant was to take ibuprofen for pain. *Id.* The notes include "OA hip/knees," *id.,* which may mean osteoarthritis. In October 2004, Claimant complained of pain when sitting for more than ten to fifteen minutes, but the portion of the record indicating where she experienced the pain is illegible. R. 269.

### 3. Southwest Physicians Group

Records from this provider show that Claimant was injured in a fall at work in November 2003, where she injured her right shoulder, elbow, and wrist, resulting in poor circulation in her right hand. R. 164. The records show that Claimant was excused from work through November 24, 2003. *Id.* The records also include a referral for a hysterectomy. R. 159.

### 3. Advocate Christ Medical Center

In September 2004, Claimant underwent a surgical hysterectomy. R. 138-53. The surgery detected and resolved a uterine prolapse. R. 138. Claimant was given a set of generic discharge instructions for hysterectomy patients, which restricted Claimant from lifting more than ten pounds for the twelve weeks following the surgery. R. 266. The instructions also state: "Back to work: . . . When you return to work you must still adhere to the 12 week lifting and activity limitations. Please make arrangements with your employer for light duty during the 3 months after surgery if your job requires heavy lifting or heavy activity." *Id.*

### 4. Dr. J.R. Perez-Sanz

Dr. Perez-Sanz treated Claimant for a left shoulder impingement on December 15, 2004. R. 199. Dr. Perez-Sanz recommended physical therapy, but noted that surgery may be necessary. *Id.*

### 5. LaGrange Memorial Hospital

On January 10, 2005, Claimant underwent anthroscopic surgery on her left shoulder. R. 201-10. MRI and x-ray results were consistent with a SLAP lesion. R. 202. The surgery confirmed the diagnosis and repaired the injury. R. 209-10.

### 6. Michael Maday, MD/Midland Orthopedic Associates

Dr. Maday first saw Claimant to provide a second opinion regarding Claimant's left shoulder impingement. R. 259-60. Dr. Maday recommended surgery, which Claimant underwent on January 10, 2005, at LaGrange Memorial Hospital. *Id.* Dr. Maday continued to treat Claimant after the surgery. R. 230, 231, 235-37, 241, 243, 245, 246, 251, 259, 260. The records show progress in Claimant's recovery. *Id.* Her injury was diagnosed as a SLAP (superior labrum anterior-posterior) injury to her left shoulder. R. 251. Claimant was sent to physical therapy to aid in her recovery. *Id.* Approximately two months following the surgery, Dr. Maday cleared Claimant to return to light duty work with pushing, pulling, lifting, and carrying limits to her left arm. R. 243. Two months later, Claimant was cleared for all work except for repetitive overhead work. R. 236-37. A visit eight months after the surgery showed residual weakness and complaints of occasional pain, and Dr. Maday instructed Claimant to continue with a home exercise program. R. 235.

### 7.  Advocate Health Centers

Following her shoulder surgery, Claimant underwent physical therapy.  R. 238, 240, 242, 247, 248.  The physical therapy notes indicate decreasing pain, and eventually no pain, over the course of two months.  *Id.*

### 8.  Oak Lawn MR and Imaging Center

 In March 2003, a large cystic mass in Claimant's right shoulder was found.  R.  226.  A January 2004 report showed minor degenerative changes in Claimant's right shoulder.  R. 223.  A bone density test in May 2004 showed no significant findings of osteoporosis, but indicated that Claimant's lumbar spine was borderline osteopenic[2].  R. 222.  An October 2004 report showed suspicion of a left shoulder SLAP lesion.  R. 221.  A February 2005 report indicated minor degenerative changes to Claimant's right shoulder and a normal right hip.  R. 220.

### 9.  Dr. Frank Jimenez - State Agency Medical Consultant

Dr. Frank Jimenez reviewed the medical records submitted as of January 13, 2005.  R. 211-218.  He did not examine Claimant.  Dr. Jimenez found the following limitations: occasional lifting of fifty pounds; frequent lifting of twenty-five pounds; standing and walking of six hours per eight-hour day; sitting of six hours per eight-hour day; unlimited pushing and pulling; no postural limitations; and a limitation of no repetitive reaching overhead.  *Id.*  This resulted in an RFC of medium work with no repetitive overhead

---

[2]Osteopenia means "[d]ecreased calcification or density of the bone."  Stedman's at 1270.

10

reaching. *Id.*

**10. High Tech Medical Park**

Claimant submitted a record from High Tech Medical Park to the Appeals Council after the ALJ had denied her claim. R. 9-10. The record is a radiology exam report based on x-ray and MRI exams performed on May 26, 2006, and shows degenerative disc disease at each disc level from C4-C5 through C6-C7, greatest at C5-C6; moderate bilateral bony forminal stenosis[3] and mild to moderate central canal encroachment by uncovertebral[4] osteophytes[5] and posterior osteophyte disc complex at C5-C6; mild encroachment on the thecal[6] sac symmetrically without central stenosis by small posterior osteophytes of the vertebral endplates at C4-C5; mild bony encroachment by osteophytes without central stenosis at left foramen[7] of C6-C7; and no disc herniation in the cervical spine. *Id.*

---

[3]"A stricture of any canal." Stedman's at 1673.

[4]"Pertaining to or affecting the uncinate process of a vertebra.' Stedman's at 1884. Uncinate means "hooklike or hook-shaped." Stedman's at 1883.

[5]"A bony outgrowth or contusion." Stedman's at 1270.

[6]"Relating to a sheath, especially a tendon sheath." Stedman's at 1794.

[7]"An aperture or perforation through a bone or membranous structure." Stedman's at 674.

**D.    The ALJ's Opinion- November 15, 2005**

After conducting the hearing and reviewing the evidence, the ALJ found that Claimant was not disabled. R. 20-29. Specifically, the ALJ determined that Claimant retains the RFC to perform light exertional work. R. 23.

The ALJ followed the five-step evaluation process pursuant to 20 C.F.R. § 404.1520. R. 24. At step one, the ALJ found that Claimant has not engaged in substantial gainful activity since her alleged onset date of disability.  *Id.* At step two, the ALJ found that Claimant's left shoulder impingement, and status post surgical repair and residuals of right shoulder surgery are severe impairments. R. 25. The ALJ also found, however, that Claimant's other alleged impairments of a hysterectomy and bladder hernia, as well as arthritis of the hips, are not severe impairments.  *Id.*  Under the third step, the ALJ concluded that none of Claimant's impairments are severe enough to meet or medically equal, either singly, or in combination, any of the impairments listed in the Social Security Regulations. *Id.*

At step four, after reviewing Claimant's medical evidence, the ALJ determined Claimant's RFC, and whether she has the ability to return to her past relevant work. R. 26-7. In making such an assessment, the ALJ noted that he must consider "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529, and Social Security Ruling 96-7p."  R. 26.

In making the RFC determination, Claimant's testimony as to her symptoms and their

effects was found "not entirely credible" by the ALJ, due to inconsistencies between her testimony and the objective medical evidence, which showed fewer limitations than she claimed. *Id.* In support of this conclusion, the ALJ noted that on May 5, 2005, Claimant was released by a doctor to return to all work duties except repetitive overhead activities. *Id.* At that time, Claimant's physical examination was essentially normal, and she was close to maximum medical improvement. *Id.* The ALJ did not accept the conclusion of the State Agency medical consultant, who had determined that Claimant was capable of performing medium work. *Id.*

The ALJ concluded that "Claimant retains the [RFC] to perform light exertional level work with the ability to lift and carry objects weighing up to twenty pounds occasionally, and ten pounds frequently." R. 27. Due to the residual of her shoulder injury, and status post shoulder weakness, the ALJ found that Claimant is further restricted from performing bilateral overhead work. *Id.* Claimant can, however, stand, walk, and sit six hours in an eight hour work day. *Id.* Further environmental limitations include the avoidance of work at unprotected heights, around moving machinery, open flames, and bodies of water. *Id.* The ALJ concluded that Claimant could not return to her past relevant work as a delivery driver. *Id.*

Finally, under step five, the ALJ concluded that Claimant is not disabled. R. 29. The ALJ noted that the VE had testified that a hypothetical person with Claimant's profile could perform approximately 1,600 jobs as an order clerk, 660 jobs in a checker position, and 1,800 jobs as an interviewer. *Id.* Based on this testimony, the record as a whole, and considering

Claimant's age of fifty-two, her educational background, work experience, and RFC, the ALJ concluded that Claimant is capable of performing a significant range of light work. *Id.*

## II. LEGAL STANDARDS

### A.     Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42. U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1993). Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A mere scintilla of evidence is not enough. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

While a reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), it may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz*, 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42. U.S.C. § 405(g).

**B.     Disability Standard**

Disability insurance benefits ("DIB") are available to a claimant who can establish "disability" under the terms of Title II of the Social Security Act. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). An individual is "disabled" if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A disabled individual is eligible for DIB, however, only if she is under a disability. 42 U.S.C. §§ 402(e)(8), 423(a), 1382c(a). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A),1382c(a)(3)(B).

To make this determination, the Commissioner must employ a five step sequential

analysis. 20 C.F.R. §§ 404.1520(a)-(f); 416.920(a)-(f). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether she can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *White v. Barnhart*, 415 F.3d 654, 657 (7th Cir. 2005).

## III. DISCUSSION

Claimant raises four issues for judicial review: (1) whether the ALJ erred in failing to consider the combined effect of Claimant's impairments; (2) whether the ALJ erred in making his credibility findings; (3) whether the VE's testimony contradicted reliable job information; and (4) whether the Appeals Council erroneously rejected Claimant's submission of an MRI report.

### A.   The ALJ Failed to Address Evidence of Claimant's Hip and Back Problems or the Effects of Her Hysterectomy and Prolapsed Bladder.

Claimant argues that the ALJ improperly dismissed as not severe Claimant's back pain, hip pain, and the effects from her hysterectomy.  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521.

As Claimant correctly notes, the ALJ's opinion lacks much discussion as to why those alleged impairments were dismissed as not severe.  *See Steele,* 290 F.3d at 940.  Unless the

ALJ's failure to consider these alleged impairments might change the outcome, however, the decision will stand. *See Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995) ("A written evaluation of each piece of evidence or testimony is not required. However, in cases where the claimant presents considerable proof to counter the agency's position, the ALJ must articulate, at some minimal level, his analysis of the evidence.").

There are two ways in which the impairments dismissed as not severe by the ALJ could potentially affect the disability analysis and warrant remand. First, the ALJ acknowledged that if Claimant were limited to less than six hours of standing or walking per day, she would be limited to sedentary work and, based on her age, work history, and education, would be disabled. R. 304. Thus, if any of the impairments discounted as not severe limit Claimant's ability to stand or walk, the ALJ's failure to analyze this impairment would warrant remand. Second, Claimant argues that her hysterectomy limited her ability to lift anything over ten pounds. This limitation is irrelevant, however, because the VE testified that even with such a limitation, there would be jobs in the national economy available to Claimant. R. 305.

Claimant testified that the problems with her hip and the effects of the hysterectomy would prevent her from standing or walking for six hours in an eight-hour day. As discussed below, the ALJ improperly discredited Claimant's testimony on these issues because there was objective medical evidence regarding Claimant's hip and back problems. For example, the Excel records noted that an x-ray of Claimant's lumbar spine showed moderate degenerative changes, the Oak Lawn records show a bone density finding that Claimant's lumbar spine was borderline osteopenic, and Dr. Vukomanovic's records appear to diagnose osteoarthritis in the hips. The Court expresses no opinion as to whether this evidence changes the disability conclusion, but the ALJ should have addressed it in his opinion.

## B.      The ALJ Improperly Discredited Claimant's Testimony as Not Credible

The ALJ's opinion states:

> Testimony by the claimant as to the symptoms and their functional affects [sic] was evaluated using the criteria of SSR 96-7p, and found not entirely credible due to the inconsistencies with the objective medical evidence showing that [sic] far less limitations that [sic] she alleged. I note that although the claimant sustained injury to her left shoulder, she has received conservative medical management, as well as surgical intervention. Moreover, on May 5, 2005, Dr. Maday released her to return to all work duties except for repetitive overhead activities. At that time her physical examination was essentially normal and he considered her close to being at maximal medical improvement.

R. 26.

SSR 96-7p states:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

The credibility determination portion of ALJ's opinion does not mention Claimant's testimony regarding the effect her hip pain and hysterectomy have affected her activities of daily living, such as her testimony that she cannot walk more than a few blocks. Nor does it discuss the objective medical evidence of hip problems. Based on the reference to Dr. Maday and Claimant's left shoulder, it appears that the ALJ may have ignored that line of testimony altogether after finding earlier in the opinion that Claimant's back and hip ailments and the effects of her hysterectomy were not severe. In any event, the credibility determination does not comply with SSR 96-7p and remand is required. *See, e.g., Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488-89 (7th Cir. 2007).

**C.    The ALJ was not Required to Discuss Provisions of the Occupational Outlook Handbook that May Have Conflicted with the VE's Testimony**.

In his step five analysis, the ALJ relied on the testimony of the VE that 1600 order clerk, 660 checker, and 1800 interviewer jobs were available for someone with Claimant's set of limitations. Claimant argues that the ALJ erred for two reasons.

First, Claimant argues that according to the Dictionary of Occupational Titles

("DOT"), four of the five categories of order clerk jobs were at a semi-skilled level, which Claimant lacks, and the remaining category is a sedentary position. Second, Claimant argues that according to the Occupational Outlook Handbook ("OOH"), all of the positions noted by the VE require a high school education, which Claimant lacks. The Social Security Administration has taken judicial notice of the DOT and OOH. 20 C.F.R. § 404.1566(d). The Seventh Circuit has made clear, however, that with respect to the DOT, the ALJ is not required to resolve discrepancies between the VE's testimony and the DOT unless the discrepancy was made known at the hearing. *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002). The Court finds no reason to apply a different rule to the OOH. Because the discrepancies on which Claimant now relies were not mentioned at the hearing, the ALJ was not required to address them.

**D.      The Appeals Council Did Not Err in Refusing to Consider New Evidence.**

Finally, Claimant argues that the Appeals Council erred in rejecting MRI evidence showing degeneration of Claimant's spine first submitted by Claimant in her request for review. The Appeals Council refused to consider the evidence because it was dated over six months past the date of the ALJ's decision. Because of the nature of spine degeneration, Claimant argues, the MRI results must reflect degenerative problems as of the date of the ALJ's decision, and therefore are material.

While an Appeals Council decision not to review a case is not ordinarily reviewable in a district court, a court may reverse the Appeals Council decision if it was based on a mistake of law, such as a determination that newly submitted evidence is not material to the disability analysis. *Eads v. Sec'y of Dept. of Health & Human Serv.*, 983 F.2d 815, 817 (7th Cit. 1993). Claimant has not shown that the MRI results are material, and Claimant's arguments that there must have been degeneration as of the date of the ALJ's decision are pure speculation. Therefore, the Appeals Council did not err in finding the evidence immaterial and refusing to review the case.

## IV.  CONCLUSION

The ALJ failed to discuss or explain the impact of Claimant's hip and back problems and the effects of her hysterectomy and prolapsed bladder on her ability to perform work. He also failed to adequately explain his decision to discredit Claimant's testimony.  The ALJ did not err in relying on the testimony of the VE, and the Appeals Council did not err in refusing to consider the new evidence presented by Claimant for the first time before the Appeals Council.  **Claimant's motion for summary judgment is granted in part and denied in part, the Commissioner's motion for summary judgment is granted in part and denied in part, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.**

**SO ORDERED THIS 10th DAY OF SEPTEMBER, 2007.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

**Christine M. Naper**
2701 N. Marshfield Ave.
Chicago, IL 60614

Counsel for Claimant

**Gina E. Brock**
Assistant United States Attorney
219 S. Dearborn Street
Chicago, IL 60604

Nancy L. Bingaman
Danielle A. Pedderson
Social Security Administration
200 West Adams Street, 30th Floor
Chicago, IL 60606

Counsel for Commissioner